IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-01963-CBS

PATRICIA S. PHILLIPS,
    Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,
    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action comes before the court pursuant to Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33, for review of the Commissioner of Social Security's final decision denying Ms. Phillips's application for Social Security Disability Income ("SSDI") benefits.[1] Pursuant to the Order of Reference dated July 27, 2015, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). (*See* Doc. # 23). The court has reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response Brief, the administrative record, the entire case file, and the applicable law and is sufficiently advised in the premises.

---

[1] SSDI pays benefits to people with disabilities who have worked and paid Social Security taxes on their earnings. Benefits payable under Title II (SSDI) are based on earnings history. Regulations for Title II are found at 20 C.F.R. §404.

I.   Procedural History

Ms. Phillips filed an application for SSDI benefits with a protective filing date of November 10, 2011. (*See* Administrative Record ("Tr.") (Doc. # 10) at 215-16, 266).[2] She claimed that she became disabled on August 31, 2008, when she was injured while working as a Certified Nursing Assistant ("CAN") in a nursing home. (Tr. 50, 215, 234, 490). Her claim was denied on August 28, 2009 and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 106-120, 125). ALJ Beverly Susler Parkhurst held a hearing on December 4, 2012 and February 13, 2013. (Tr. 36-106). Ms. Phillips was represented by counsel and testified at the hearing. (*Id.*). At the hearing, Ms. Phillips amended the onset date of her disability to August 29, 2009. (Tr. 50). Dr. Gilberto Munoz testified at the hearing as a Medical Expert ("ME"). (Tr. 74-82, ). Ms. Jamie Massey testified at the hearing as a Vocational Expert ("VE"). (Tr. 82-92). The ALJ issued her written decision on March 1, 2013, concluding that Ms. Phillips was not disabled within the meaning of the Act. (Tr. 16-29). Counsel was appointed on April 25, 2013 and Ms. Phillips sought review of the ALJ's decision. (Tr. 12-15). The Appeals Council granted Ms. Phillips's request for an extension of time and on May 13, 2014 denied her request for review. (Tr. 1-6). Ms. Phillips filed this civil action through counsel on July 15, 2014. (*See* Doc. # 1). The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

---

[2] To qualify as an effective claim, an application for SSI benefits must be submitted on a prescribed form. 20 C.F.R. § 404.610. However, a written statement indicating a person's intent to claim benefits can, if it meets certain requirements, establish a protective filing date. Id. § 404.630.

II.     Standard of Review

In reviewing the Commissioner's final decision, the court must "closely examine the record as a whole to determine whether the . . . decision is supported by substantial evidence and adheres to applicable legal standards." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (internal quotation marks and citation omitted). *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (court "must determine whether the . . . decision of nondisability, . . . is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court "must affirm . . . if the decision is supported by substantial evidence." *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing 42 U.S.C. § 405(g)). The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted); *Mounts v. Astrue*, No. 11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and come to a different conclusion than the ALJ) (citation omitted).

III.    Analysis

An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

3

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  *See Williams*, 844 F.2d at 750-52 (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  *Id.* at 750–51.  If plaintiff's impairment does not meet or equal a listed impairment, the evaluation proceeds to step four, where the Commissioner assesses a claimant's Residual Functional Capacity (RFC), 20 C.F.R. §§ 404.1520(e), 416.920(e), and the claimant must establish that he does not retain the RFC to perform his past relevant work. *Pipkins v. Colvin*, No. CIV-14-136-RAW-KEW, 2015 WL 3618281, at *1, n. 1 (E.D. Okla. June 9, 2015).  The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments; the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751.  At step four of the five-step analysis, "a claimant's RFC is measured against the physical and mental demands of the claimant's past relevant work to determine whether the claimant can resume such work." *Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) ascertaining "whether the

claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")).

"The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five the existence of a significant number of jobs in the national economy that a claimant can perform given his RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> . . . The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's RFC category, the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>
> If a conclusion of not disabled results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. . . .

*Williams*, 844 F.2d at 751-52. (internal quotation marks and citations omitted). The Commissioner can meet the burden of showing that there is other work in significant numbers in the national economy that claimant can perform by the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir.1999). "Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work." *Pipkins*, 2015 WL 3618281, at *1, n.1.

Ms. Phillips was 42 years old at the time she applied for disability benefits and thus considered a "younger individual." *See* 20 C.F.R. § 404.1563, Tr. 89. She is married and has two adult children. (Tr. 86, 269, 279). She obtained a GED in 1985 and took some college courses. (Tr. 58, 238). She graduated from the Police Academy in 1998, obtained a

cosmetology license in 1998, and completed CNA training in 2007. (Tr. 57, 88). Her past work includes cleaning and maintenance, electrician apprentice, CNA, truck driver, and security guard, among other things. (Tr. 57, 83, 85, 87, 235, 239, 244-54, 288-97). She has not worked since August 31, 2008, when she was injured at work and filed a worker's compensation claim. (Tr. 234).

The ALJ determined that Ms. Phillips: (1) had not engaged in substantial gainful activity from the alleged onset date of disability, August 29, 2009, through the last date that she was insured for purposes of her claim, June 30, 2011; (2) had as severe impairments "degenerative disc disease in her lumbar spine and status post lateral subluxation of the left patellofemoral joint," (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526), and (4) had the RFC to perform the full range of light work. (Tr. 21-23). The ALJ determined that Ms. Phillips was capable of performing her past relevant work that was categorized at the light exertional level as generally performed, as well as a substantial number of other jobs existing in the national economy. (Tr. 27-28). The ALJ concluded at step five that Ms. Phillips was not disabled at any time from August 29, 2009, the alleged onset date of disability, through June 30, 2011, the date that she was last insured. (Tr. 24-29).

Ms. Phillips alleges that: (1) the ALJ's determination that she "did not have severe mental impairments is not based on substantial evidence" and that she "failed in her duty to develop the record regarding these mental impairments," (2) the ALJ failed to consider the limiting effects of mental impairments in assigning an RFC, (3) the ALJ "failed to properly apply the treating physician rule to the medical opinion evidence," (4) the ALJ's credibility determination was not

6

based on substantial evidence, (5) the ALJ failed in her duty to develop the record, and (6) the ALJ erred by finding that all of her past relevant work was within her RFC. (*See* Doc. # 15 at 5, 26-40 of 44).

A.   Mental Impairments

Ms. Phillips alleges that the ALJ's determination that she did not have severe mental impairments was not based on substantial evidence. "A 'mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms.' " *Lankford v. Colvin*, 612 F. App'x 496, 499-500 (10th Cir. 2015) (quoting 20 C.F.R. §§ 404.1508). "Ultimately, the outcome of the case depends on the demonstration of the functional limitations of the disease or impairment . . . ." *McKean v. Colvin*, No. 1:13-CV-2585, 2015 WL 1201388, at * 7 (M.D. Pa. Mar. 16, 2015) (citations omitted).

Ms. Phillips submitted records of 6 counseling sessions she attended at Ryon Medical & Associates, LLC between December 12, 2012 and January 16, 2013. (Tr. 1385-1398). There is no evidence in the record that she received treatment from any mental health provider until December 12, 2012. The ALJ recognized that Ms. Phillips had been prescribed psychotropic medication and attempted to list every medication she had been prescribed. (Tr. 96-104). However, there were no objective medical or psychological test results to substantiate a mental impairment. The record is consistent with the ALJ's determination that Ms. Phillips had only mild limitations in activities of daily living, social functioning, maintaining concentration, persistence, or pace, and no episodes of decompensation of an extended duration. (Tr. 22).

There was no evidence that mental impairments caused any significant work-related limitations. The evidence in the record, including the records of her 6 mental health counseling sessions, indicates that she experienced nothing more than mild limitations in her ability to perform basic mental work activities. (*See* Tr. 22, 51-52, 20 C.F.R. §§ 404.1520(c), 404.1520a(d)(1), § 12.00 C. of the Listing of Impairments, 20 C.F.R., part 404, Subpart P, Appendix 1).[3] No mental health professional ever diagnosed her as suffering from a mental impairment. Apart from Ms. Phillips's reports that she experienced anxiety, depression, and symptoms of Post-Traumatic Stress Disorder ("PTSD"), there is no evidence in the record of a diagnosis of anxiety, depression or PTSD. (*See, e.g.,* Tr. 1388 ("She thinks she has Posttraumatic Stress Disorder. She is not diagnosed with this. . . .")). The ALJ's determination that Ms. Phillips did not suffer from a severe mental impairment is supported by substantial evidence in the record as a whole.[4]

Ms. Phillips argues that the ALJ should have developed the record further as to her mental impairments, but she never raised the issue to the ALJ. *See Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (requiring claimant to raise a substantial issue to trigger ALJ's duty to develop the record). Nevertheless, the ALJ did consider Ms. Phillips's mental impairments. (Tr. 22, 26). Ms. Phillips argues that the ALJ should have obtained a consultative psychological examination. The Tenth Circuit Court of Appeals has identified three instances when a consultative examination is often required: "where there is a direct conflict in the medical

---

[3] The records of the 6 mental health counseling sessions were created approximately 18 months after the date Ms. Phillips was last insured for disability and did not include medical findings for the time period during which she was insured. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir.1993) (holding that the claimant "must prove she was totally disabled prior to [the date her insured status expired]").

[4] Thus, the ALJ did not err in failing to assign restrictions in the RFC relating to Ms. Phillips's mental impairment. (*See* Doc. # 15 at 31 of 44).

evidence"; "where the medical evidence in the record is inconclusive"; and "where additional tests are required to explain a diagnosis already contained in the record." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir.1997). *See also* 20 C.F.R. § 404.1519a (describing when a consultative examination is appropriate). There is "no need to further develop the record" where, as here, "sufficient information existed for the ALJ to make her disability determination." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008). A consultative psychological examination would necessarily have taken place well after the date that Ms. Phillips was last insured. Based on the credible evidence regarding Ms. Phillips's daily activities and physical abilities, the record evidence of only mild restrictions and difficulties, and the lack of evidence suggesting that the claimant's mental impairment had any greater effect on her ability to work, the court concludes that the ALJ did not err in failing to obtain a consultative psychological examination of Ms. Phillips.

B.   Treating Physician Rule

Ms. Phillips alleges that the ALJ violated the "treating physician rule" by failing to give controlling weight to the opinion of Dr. Satt that she is precluded from all postural activities and limited to the sedentary exertional level, with additional limitations. (*See* Doc. # 15 at 32-33 of 44, Tr. 26-27, 1117-1120). The treating physician rule requires the Commissioner generally to give substantial weight to the opinion of a claimant's treating physician and to provide specific legitimate reasons for rejecting such an opinion. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ determines "whether the

opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir.2003) (internal quotation marks and citation omitted). An ALJ may disregard a treating physician's opinion if it is contradicted by other medical evidence or otherwise inconsistent with substantial evidence in the record. *Marshall v. Astrue*, 315 F. App'x 757 (10th Cir.2009). *See also* 20 C.F.R. § 404.1527(d)(2). The analysis of how much weight to accord a treating source opinion is sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing Social Security Ruling ("SSR") 96–2p, 1996 WL 374188 (July 2, 1996)).

Dr. James M. Satt, M.D. was one of Ms. Phillips's treating physicians at Harmony Health Center. (Tr. 693-742). In 2012, after the last date that Ms. Phillips was insured, Dr. Satt prepared a Medical Source Statement of Ms. Phillips's ability to do work-related physical activities in which he opined that she was able to lift 20 pounds occasionally, lift 10 pounds frequently, and stand or walk for 2 hours in an 8-hour workday. (Tr. 1117). He opined that she was not able to perform postural activities and requires a sit/stand option, is limited in her push/pull activities because of her foot drop, and must avoid hazards. (Tr. 1118, 1120). The ALJ gave no weight to Dr. Satt's opinion "because it is inconsistent with the clinical findings and treatment notes." (Tr. 26). The ALJ stated:

> The undersigned affords no weight to Dr. Satt 's opinion that the claimant is precluded from all postural activities and she is limited to the sedentary exertional level, with additional limitations. (Ex. 24F/53-56). This opinion is not afforded controlling weight because it is inconsistent with the clinical findings and treatment notes. The most recent evidence documents a mild lumbar impairment and

10

>improved knee pain following her surgery. There is no evidence of post-surgical complications. (Ex. 24F-17F). This opinion is not given great weight because the evidence shows malingering, symptom exaggeration, and the claimant's misrepresentation of her need for an assistive device. (Ex. 17F/7F). Therefore, the symptoms and allegations relied upon in completing the residual functional capacity, are not credible.

(Tr. 26).

Dr. Satt first saw Ms. Phillips on September 3, 2008, at which time he noted lumbar strain and sciatica. (Tr. 702, 737). He prescribed Vicodin, ibuprofen, and physical therapy. (Tr. 702). He noted that "there is no clear evidence of nerve injury." (Tr. 696, *see also* Tr. 491 ("no nerve or compression was noted.")). He found she had reached maximum medical improvement on September 29, 2010. (Tr. 697). By November 8, 2010, Dr. Satt noted "my goal now is to reduce the number and doses of her medications." (Tr. 696).

The ALJ relied primarily on the testimony of the ME, Dr. Munoz. (Tr. 25-27). An ALJ may rely upon testimony of a medical expert. *Richardson v. Perales*, 402 U.S. 389, 408 (1971). Dr. Munoz testified that Ms. Phillips suffers from mild arthritis in her back, with no evidence of neuropathy. (Tr. 75). In November of 2011 she underwent a right knee patellar femoral open incision, which is a common surgery. (Tr. 76). The medical record contains no documentation of post-surgical problems or of any severe impairments. (Tr. 76-77, 79). Dr. Munoz testified that considering the lack of evidence of any post-surgical treatment, it is reasonable to conclude that Ms. Phillips does not have any residual limitations that significantly affect her work-related activities. Even if he gave some credence to her complaints of pain, he concluded that she remained capable of activities at the light exertional level. (Tr. 78-80). Dr. Munoz was qualified to express an opinion as to whether Ms. Phillips's impairments were disabling and articulated plausible underlying reasons for his opinion in adequate detail. (Tr. 74-82). His opinion was consistent with the medical reports.

11

The ALJ determined that Dr. Satt's opinion was not well-supported by diagnostic techniques and, even if it were, it was not consistent with other substantial evidence in the record. The medical record reveals only mild degenerative changes within normal limits and no acute abnormalities regarding Ms. Phillips's back and knee. (Tr. 421-23, 435, 447, 462, 474-75, 481-82, 486-87, 622, 634, 671-72, 678, 680-82, 684-86, 757-58, 845-46, 873, 1062, 1253, 1265-67, 1272, 1279-81, 1384). The record reflects that the ALJ gave meaningful consideration to Dr. Satt's medical opinion and gave "good reasons" for not giving controlling weight to that opinion. The reasons largely concerned the degree to which the medical opinion was unsupported by objective evidence, the inconsistency between the opinion and the record as a whole, and the extent to which the opinions were based on Ms. Phillips's subjective complaints, all permissible reasons. *See* 20 C.F.R. §§ 404.1527(d)(3) ("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion") and (d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The ALJ gave Dr. Satt's opinion no weight because it was not supported by the clinical and laboratory diagnostic outcomes performed himself or by other medical professionals, and inconsistent with other evidence in the record, reasons that are recognized as legitimate. *Pilgrim v. Apfel*, 215 F.3d 1337 (10th Cir. 2000). The court finds no error on this issue.

C.  Credibility

The ALJ concluded that Ms. Phillips's complaints were not fully credible as to the intensity, persistence, and limiting effects of her symptoms. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when

supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to [that] evidence." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (internal quotation marks and citation omitted). Ms. Phillips argues that the ALJ's credibility determination is not supported by substantial evidence. (*See* Doc. # 15 at 33-36 of 44).

The ALJ considered Ms. Phillips's testimony at the administrative hearing. Ms. Phillips testified in December of 2012 that she does not drive while on medication, does nothing during the day, cannot answer the phone, could not sleep "for four days one time," and if "I'll get a bar stool that I might sit on and cook a meal and then when I do that I'm down for three days." (Tr. 60-61, 62-63, 72-73). However, she also testified that "[i]f I'm not taking any medication, if I have to run to the store which is only a few blocks away, then I will do that." (Tr. 64). She testified that "I'm not an invalid" and that her medication helps her walk. (Tr. 67). *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988) ("ALJ can weigh and evaluate numerous factors in determining the credibility of pain testimony," including "the levels of medication and their effectiveness"). Ms. Phillips conceded that in 2009 she was observed by an insurance investigator driving, getting out of a car, bending down and leaning into the back of a car, walking from a car to a building and back, removing her leg brace and putting it in the back seat of a car, walking around a car dealership, test driving a car, and walking into a restaurant. (Tr. 66-67, 409-10). She told the investigator that her impairments were significantly improved. (Tr. 26, 410). Before a medical appointment, she was also observed standing without assistance and walking "on an area that was filled with rocks." (Tr. 429).

The ALJ concluded based on Ms. Phillips's medical history that the degree of limitation she alleged she experienced was not supported by medical evidence of impairment. Diagnostic

imaging of the cervical spine and the lumbar spine performed on September 3, 2008, September 19, 2008, October 19, 2008, January 23, 2009, February 15, 2009, March 3, 2009, April 28, 2009, and December 28, 2010 revealed only mild degenerative changes, a "mild disk bulge at C4-5 and C5-6," and no acute abnormalities. (Tr. 421, 435, 474-75, 481-82, 486-87, 622, 634, 671, 678, 684-86, 845-46, 873, 1062, 1265-67, 1272, 1279-81, 1384). Diagnostic imaging of her right leg on May 9, 2009, May 14, 2009, and December 30, 2010 indicated "normal limits." (Tr. 447, 462, 672, 680-82, 757-58, 1253). Ms. Phillips saw Dr. Michael Vennix in Houston, Texas on July 15, 2010. (Tr. 422-23). Dr. Vennix performed "[s]ensory and motor nerve conduction studies to assess the physiologic integrity of the peripheral nervous system extending into both lower extremities." (Tr. 422). The results were within normal limits and mostly unremarkable. (Tr. 422). The ALJ discounted Ms. Phillips's description of the severity and disabling effect of her symptoms based on the lack of medical evidence to support her reported symptoms and discrepancies between her statements and the medical evidence.

The ALJ also noted substantial evidence in the record of malingering. (Tr. 26). Ms. Phillips was referred to the Pain Medicine Center of Centennial Rehabilitation Associates for evaluation and treatment, where she was evaluated by Dr. Mason and Dr. Boyd on September 22, 2010. Dr. Mason noted that Ms. Phillips "has difficulty really defining her symptoms" and "multiple inconsistencies in the patient's presentation." (Tr. 433, 436). Her "impression was that she was consciously producing or exaggerating symptoms." (Tr. 659). Dr. Boyd noted that Ms. Phillips "reported an exceptionally high number of atypical pain symptoms," and "appeared to systematically maximize and/or emphasize her pain symptom report." (Tr. 664). He noted that the medical records "showed minimal objective medical basis" for her complaints of pain and discomfort and that "test results were consistent with production and exaggeration of

14

symptoms." (Tr. 431). Drs. Mason and Boyd both noted evidence of malingering. (Tr. 431, 436). Ms. Phillips was referred to Dr. Koons for "[e]valuation of low back and bilateral lower extremity pain." (Tr. 674). Dr. Koons saw her on April 21, 2010 and found no abnormalities. (Tr. 674-75). Dr. Koons found Ms. Phillips "to be very histrionic." (Tr. 413). Ms. Phillips was referred by Dr. Koons to Dr. Danylchuk for evaluation of bilateral knee pain. (Tr. 654). Dr. Danylchuk reported in August of 2011 "I think her major concerns are overblown." (Tr. 654, 747). The ALJ "clearly and affirmatively linked [her] adverse determination of [Ms. Phillips's] credibility to substantial record evidence indicating [she] engaged in malingering and misrepresentation." *Wall*, 561 F.3d at 1070.

In sum, substantial record evidence supports the ALJ's credibility determination. The court finds no error on this issue.


D.    ALJ's Duty to Develop the Record

Ms. Phillips argues that the ALJ failed in her duty to properly develop the record. (*See* Doc. # 15 at 26, 28-31, 37-39 of 44). Under the Act, the claimant has the burden of proving a disability. *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987) (citation omitted). "But it is equally clear that a Social Security disability hearing is a nonadversarial proceeding, in which the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Id.* (internal quotation marks and citation omitted). *See also Henrie*, 13 F.3d at 360–61 ("The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.") (citation omitted). "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of

those facts." *Henrie*, 13 F.3d at 361 (internal quotation marks, citations, and brackets omitted). In determining whether the ALJ has met her obligation to fully develop the record, "the more important inquiry is whether the ALJ asked sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Gibbs v. U.S. Dep't of Health & Human Servs.*, 38 F.3d 1220, (10th Cir. 1994) (citation omitted).

At the administrative hearing, both the ALJ and Ms. Phillips's counsel questioned her regarding her current condition, alleged impairments, recent medical treatment, medications, pain, and daily activities. (Tr. 38-105). "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Cowan*, 552 F.3d at 1188 (internal quotation marks and citation omitted). "[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id.* There was record evidence regarding Ms. Phillips's daily activities, abilities, diagnoses, and treatment. The ALJ thoroughly considered all of the medical evidence and took testimony from the ME. Ms. Phillips was provided ample opportunity to present all of her evidence and there was no request from her counsel for any further development of the record. There was no need to further develop the record because sufficient information existed for the ALJ to make her determination. The court is satisfied that the ALJ fulfilled her duty to develop the record and finds no error on this issue.

E.	Past Relevant Work

"A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. "In making the RFC assessment, an ALJ considers how an impairment, and any related symptoms, may cause physical and mental limitations that affect what a claimant can do in a work setting." *Davison v. Colvin*, No. 14-1122, 596 F. App'x 675, 680 (10th Cir. 2014) (citing 20 C.F.R. § 404.1545(a)(1)). The RFC represents "the most [a claimant] can still do despite [his] limitations." *Id.* "The RFC assessment is made based on all the evidence in the record, both medical and non-medical." *Davison*, 596 F. App'x at 680.

The ALJ determined that Ms. Phillips had the RFC to perform the full range of light work, meaning that she "is capable of lifting or carrying 20 pounds occasionally, lifting or carrying 10 pounds frequently, sitting for 6 hours in an 8-hour workday, and standing or walking 6 hours in an 8-hour workday." (Tr. 23, 27). Ms. Phillips argues that the ALJ erred at step four of her analysis, where she found that Ms. Phillips could perform her past jobs of nurse's assistant, corrections officer, forklift operator, and truck driver. (Tr. 27 ¶ 6). The VE testified that these jobs were performed at the medium exertion level. (Tr. 27, 82-83, 315). The ALJ found that Ms. Phillips had the RFC to perform the full range of light work. (Tr. 23). Thus, these past jobs at the medium exertion level were not within Ms. Phillips's RFC. Ms. Phillips concedes that this error "is likely harmless in light of the findings the ALJ made at step five of her analysis." (See Doc. # 15 at 40 of 44).

Based upon the VE's testimony, the ALJ also found that Ms. Phillips's RFC permitted her to perform her past work as a security guard and a significant number of other jobs, which are performed at the light exertional level. (Tr. 27, 83, 91-92, 315). The ALJ could rely on this

17

testimony, as it was based upon a hypothetical question that included all of the limitations the ALJ found credible.  *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding no error when the ALJ relied upon a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment).  The court finds no error in the ALJ's determination that Ms. Phillips could perform the security guard job and other jobs identified by the VE.  *See Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) ("Since the unchallenged step-five finding is, by itself, a sufficient basis for the denial of benefits, plaintiff's success on appeal is foreclosed regardless of the merit of his arguments relating to step four.").

IV.   Conclusion

     The Commissioner's determination that Ms. Phillips is not disabled is "clearly and affirmatively linked . . . to substantial record evidence. . . ."  *Wall*, 561 F.3d at 1070 (citation omitted).  The Tenth Circuit's "precedents do not require more" and the "limited scope of review precludes [this court] from reweighing the evidence or substituting [its] judgment for that of the" Commissioner.  *Id.* (internal quotation marks and citation omitted).  The Commissioner could properly conclude that Ms. Phillip was not disabled within the meaning of Title II of the Social Security Act.  Accordingly,

     IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear her own attorney fees and costs.

     DATED at Denver, Colorado, this 4th day of February, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge